**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

STATE OF RHODE ISLAND, :
Plaintiff, :
v. : C.A. No. 03-599T
UNITED STATES OF AMERICA, ET AL., :
Defendants. :

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF ITS' OBJECTION TO UNITED STATES' EMERGENCY MOTION FOR PROTECTIVE ORDER QUASHING SUBPEONAS AND NOTICES OF DEPOSITION AND REQUESTING INSTRUCTION REGARDING EXPERT DEPOSITIONS**

NOW HERE COMES the STATE OF RHODE ISLAND, by and through its counsel, and objects to the Unites States' Emergency Motion for Protective Order Quashing Subpeonas and Notices of Deposition and Requesting Instruction regarding Expert Depositions for the reasons set forth in the attached Memorandum.

FOR THE STATE OF RHODE ISLAND

PATRICK C. LYNCH
ATTORNEY GENERAL

By: [signature]

TRICIA K. JEDELE (#5958)
ANNE TURILLI (#5502)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, ext. 2400
Fax: (401) 222-3016

**CERTIFICATE OF SERVICE**

*I, the undersigned, hereby certify that a copy of the within Objection and Memorandum in Support thereof were mailed, postage prepaid on this 26th day of September, 2005 and sent via electronic mail to:*

Laurel A. Bedig, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986
Laurel.Bedig@usdoj.gov

Michael P. Iannotti, Esq.
Assistant United States Attorney
District of Rhode Island
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
michael.ianotti@usdoj.gov

Matthew R. Oakes
Environmental Defense Section
Environment & Natural Resource Division
United States Department of Justice
P.O. Box 23986
Washington, DC 20026-3986
Matthew.Oakes@usdoj.gov

Heather E. Gange
Environmental Defense Section
Environment & Natural Resource Division
United States Department of Justice
P.O. Box 23986
Washington, DC 20026-3986
Heather.Gange@usdoj.gov

Colleen Cole
___________________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STATE OF RHODE ISLAND,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>Defendants. | : | C.A. No. 03-599T |

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF ITS' OBJECTION TO UNITED STATES' EMERGENCY MOTION FOR PROTECTIVE ORDER QUASHING SUBPEONAS AND NOTICES OF DEPOSITION AND REQUESTING INSTRUCTION REGARDING EXPERT DEPOSITIONS**

The Pretrial Order issued by the Court in this case requires that "[o]n or before the Closure Date, . . . all depositions and other discovery must be completes. . . . No discovery may be conducted after the Closure Date except by agreement of all counsel or by order of the Court." Pretrial Order, ¶¶ 1, 2 (emphasis in original).

Stated simply, all counsel had agreements as to both the time period within which depositions could be conducted and the number of depositions that could be taken. The government is now attempting to renege on its agreement and should be estopped from doing so.

***Agreement as to Timeframe***

All counsel agreed that depositions of both fact and expert depositions could be taken "up to a reasonable amount of time before trial." See *Email Communication from Bedig to Jedele*, dated August 17, 2005 (Attachment A).

Specifically, all counsel agreed that depositions could be taken "through Friday, October 14, 2005. That date may be modified depending upon the trial date that we receive." See Attachment A. Counsel's agreement clearly contemplated 30(b)(6) depositions as the government re-noticed its 30(b)(6) deposition to the State of Rhode Island on August 22, 2005, along with nine additional fact depositions. See *Email Communication from Oakes to Jedele*, dated August 22, 2005 (Attachment B).

The *Email Communication from Oakes to Jedele* did, however, highlight the parties' obvious need to finalize an agreement on the number of fact and expert depositions that could be taken "up to a reasonable amount of time before trial."

***Agreement as to Limit***

During a telephone conference call on Tuesday, September 13, 2005, counsel in this case discussed a reasonable limit on the number of fact and expert depositions to be taken in the case. During that call, the State proposed twenty depositions of both fact and expert witnesses. The government countered with a proposal that would limit each party to ten fact depositions, but allow each party to depose all of the respective experts in the case. The parties reached an express agreement to permit fifteen depositions per side. See *Email Communication from Bedig to Turilli and Jedele*, dated September 14, 2005; and *Letter from Jedele to Bedig*, dated September 16, 2005 (Attachment C).

The areas of disagreement during the call were twofold: 1) While the government needs to limit the fact depositions taken by the State while obtaining expert depositions, the State needs more fact depositions; 2) the State sought dates of availability and locations from the government's experts, which were not provided during the call; 3) the

government argued that its 30(b)(6) deposition would be included as one of its fact depositions.

***Fact Depositions Versus Expert Depositions***

The State has the burden of proof in this case. The role of the experts predominantly speaks to the valuation of the natural resource damages if the State is successful in establishing injury to the resources. The facts speak to the State's ability to establish injury. The facts are contained in the knowledge, experience, and documents of federal employees, and federal contractors.

This is not a revelation. The government has known from the time the case was filed in December of 2003 that the State intended to rely upon government prepared documents, and statements, all part of the public record, for the Allen Harbor Landfill Site, to establish injury to the resource.

In each of the three fact depositions taken by the State, the State has attempted to authenticate the documents upon which it intends to rely. The government, however, has objected to the State's attempt to authenticate documents during its depositions. Furthermore, during their respective depositions, witnesses who are familiar with the Allen Harbor Landfill Site, and in some cases have been directly involved in the Site for over a decade, had severe cases of amnesia about documents prepared by them or discussed with them or commented on by them. Moreover, it was made clear repeatedly during the three depositions taken by the State that the government was limiting the testimony of the deponent. See *Deposition Excerpts from Robert Smith, TRC Consulting,* dated August 26, 2005 and *USEPA employee, Christine Williams,* dated September 9, 2005 (Attachment D).

When the government, therefore, insisted upon re-noticing its 30(b)(6) deposition as one deposition, regardless of how many State employees would have to testify concerning the extensive and broad topics identified therein, the State considered additional 30(b)(6) depositions rather than pursuing more of the same from the government witnesses. The State's case would be irreversibly harmed if it limited to individual fact depositions as opposed to 30(b)(6) depositions.

***Availability and Location of Expert Depositions***

The State made every effort to accommodate the government's proposed schedule for deposing the State's expert witnesses during the Septmeber13, 2005 call. Indeed, the State only sought to move the date of one of the expert depositions due to scheduling conflicts. When the State proposed dates to depose the government's experts, however, we were met with a different tact.

We were advised that the dates either interfered with religious holidays or the government witness could not be made available in the Providence location, or that the expert would be present at the State's expert depositions and therefore could not be deposed simultaneously. By and large the call ended with no agreement on the State's proposed dates for the government's expert witnesses.

By email following the call, the State received proposed limited dates and locations for the government's experts. In fact, the government proposed only one date, which was the same and only date and location for two of its experts, and only provided the State with two alternative dates for the remaining two, but different experts.

To avoid unnecessary travel to Washington, D.C. to depose two experts, Chirlin and Peterson, on the same day, the State solicited the dates that the government intended

to have these experts in Rhode Island. The State intended to schedule the depositions of these experts either the day before or the day after their intended respective trips to Providence. The government refused to provide the dates to the State. See *Email Communication from Bedig to Turilli and Jedele*, dated September 16, 2005 (Attachment E).

***The 30(b)(6) Deposition***

The government argues that its Amended 30(b)(6) deposition should be upheld by the court because it was noticed by the government prior to the close of discovery. The State noticed its first 30(b)(6) deposition on June 8, 2005, well before the close of discovery.

Both the State of Rhode Island and the government advised each other that objections to the timely filed 30(b)(6) depositions would be forthcoming unless each agreed to withdraw the 30(b)(6) depositions. Neither party agreed to withdraw the 30(b)(6).

By separate Motion, therefore, the State is filing a motion for protective order objecting to the government's 30(b)(6) deposition.

***Standing and Time Resources***

The government does not have standing to object or quash the subpoenas of former Navy contractors who worked at the Allen Harbor Site or to object to or quash the depositions of former civilian employees of the Navy because neither are clients of the United States.

The attorney-client privilege protects communications made in confidence by a client to his attorney. See, e.g., United States v. Mass. Inst. of Inst. of Tech., 129 F.3d

681, 684 (1st Cir. 1997) (limiting the scope of the privilege). Because it stands in the way of a grand jury's right to every man's evidence, the privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client. See Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In a motion for court approval to allow the ex parte interview of a former employee of a party to litigation, the burden of establishing the essential elements of the attorney-client privilege is on the party claiming the protection of the privilege. Von Bulow By Auersperg v. von Bulow, 811 F. 2d 136, 144 (2d Cir. 144 (2d Cir. 1987) (quoting In re Grand Jury Subpoena Dated January 4, 1984, 750F.2d 223, 224 (2d Cir. 1984). The burden is not discharged by mere conclusory or ipse dixit assertions. Id at 225 (quoting In re: Bonanno, 344 F.2d 830, 833 (2d Cir. 1965). The definition of attorney-client privilege is "(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from himself or by the legal advisor, (8) except the protection be waived." United States v. Stern, 511 F. 2d 1364, 1367-68 (2d Cir. 1975) (Wigmore, Evidence § 2292 (McNaughton Rev.1961)).

Dennis J. Mahoney was subpoenaed for his testimony as a former civilian employee of the United States Navy. He served as an employee the Allen Harbor Landfill from 1950-1965. The contractors, Eastern Research Group and EA Engineering are former contractors with respect to Allen Harbor and Allen Harbor Landfill. Both have in-house counsel who could prepare them for these depositions, and neither are

clients of the United States. At the very least, these depositions should proceed as noticed.

The State prays that it is allowed to proceed with the reasonable depositions it has noticed because it noticed them pursuant to an agreement between the parties.

The State also prays that the court impose a reasonable schedule, including reasonable locations and dates, for all depositions it authorizes beyond the close of discovery in this case.

FOR THE STATE OF RHODE ISLAND

PATRICK C. LYNCH
ATTORNEY GENERAL

By: Tricia K. Jedele
TRICIA K. JEDELE (#5958)
ANNE TURILLI (# 5502)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, ext. 2400
Fax: (401) 222-3016

**Tricia Jedele**

**From:** Laurel.Bedig@usdoj.gov
**Sent:** Wednesday, August 17, 2005 1:52 PM
**To:** TJedele@riag.ri.gov
**Subject:** Allen Harbor

Tricia-

The United States will stipulate to produce its expert reports by Friday September 2, 2005, barring some unforeseen circumstance.

As for taking fact and expert depositions, we will agree that depositions can be taken up to a reasonable amount of time before trial. It appears that the earliest the case will be set for trial is October 18, 2005. We therefore will agree that depositions can be taken through Friday, October 14, 2005. That date may be modified depending upon the trial date that we receive.

As for discovery concerning experts, we propose not to produce or demand expert materials except initial and rebuttal reports and scientific information referenced and/or relied upon.

Laurel
Laurel A. Bedig
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986
Tel. (202) 305-0331
Fax (202) 514-8865
email laurel.bedig@usdoj.gov

NOTICE: This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system. Thank you.

**Tricia Jedele**

**From:** Matthew.Oakes@usdoj.gov
**Sent:** Monday, August 22, 2005 1:03 PM
**To:** Laurel.Bedig@usdoj.gov; Heather.Gange@usdoj.gov; David.Gualtieri@usdoj.gov; TJedele@riag.ri.gov
**Subject:** Deposition notices

Allen Harbor 10 depo notices.p...

Dear Tricia:

Attached please find an Amended Notice of Deposition of the State of Rhode Island under Federal Rule of Civil Produre 30(b)(6). In addition I have attached deposition notices for the following individuals:

1) Richard Gottlieb;
2) Jeff Crawford;
3) Judith Graham;
4) Robert Bendick;
5) Dennis Erkan;
6) Chris Deacutis;
7) Ronald Lee;
8) Dr. Ernest Julian; and
9) Joseph Migliore.

Sincerely,

Matthew R. Oakes, Trial Attorney
Environmental Defense Section

Matthew R. Oakes
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986
Tel. (202) 514-2686
Fax (202) 514-8865

NOTICE: This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system. Thank you.

**Tricia Jedele**

---

**From:** Laurel.Bedig@usdoj.gov
**Sent:** Wednesday, September 14, 2005 6:50 PM
**To:** ATurilli@riag.ri.gov; TJedele@riag.ri.gov
**Cc:** Heather.Gange@usdoj.gov; Matthew.Oakes@usdoj.gov
**Subject:** Allen harbor depositions

Tricia-
We have discussed the deposition issue concerning the fact that the FRCP limits each side to ten depositions absent mutual agreement between the paties or by order of the court. We will agree to a total of 15 depositions (fact and expert) for each side.
We are in the process of contacting all the people you told us you want to depose during our telephone conference yesterday and will advise you of their availability as soon as we can. However, since we will only agree to 15 depositions per side, please let us know of any modificatiopns to your list.
I am confirming the following depositions that you have said you want:
Robert Johnston - September 27th in Providence
Jim Shultz - September 30th in Providence
In addition, we agree to produce Gary Chirlin on October 11, 2005, at our offices in Washington, DC.
I will have responses from our other experts hopefully by tomorrow and will let you know as soon as I hear from them.
Thank you.
Laurel

Laurel A. Bedig
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986
Tel. (202) 305-0331
Fax (202) 514-8865
email laurel.bedig@usdoj.gov

NOTICE: This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system. Thank you.

State of Rhode Island and Providence Plantations

**DEPARTMENT OF ATTORNEY GENERAL**
150 South Main Street • Providence, RI 02903
(401) 274-4400
TDD (401) 453-0410

*Patrick C. Lynch, Attorney General*

September 16, 2005

**Sent Via Electronic Mail and Regular Mail**

Laurel A. Bedig, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986

**Re: State of Rhode Island v. Unites States, CA No. 03-599T (D.R.I) (Allen Harbor Landfill)**

Dear Laurel,

Your email dated September 14, 2005 proposed a deposition limitation of fifteen depositions, including both fact and expert witnesses, absent obtaining leave of court or a new stipulation by the parties. The State agrees to the government's proposal in this regard.

The State demands that, as required by the outstanding discovery requests, the United States provide us with all data and information considered by defendants' experts in forming their opinions as well as all draft expert reports by September 21, 2005. In turn, we intend to provide you with the same concerning the State's experts in that timeframe. Please be advised that we will move to strike your experts if we do not receive by that date such documents from your experts.

We have reexamined who we need to depose, based on our agreement limiting the number of depositions and will be forwarding a number of deposition notices that, as a result, will supercede and replace those discussed during our telephone conference on September 14, 2005. We have tried to correspond these notices as best as possible to the dates and times already discussed during that call.

to identify people, more than what Mr. Smith has mentioned today, we'd be happy to do that. But I just don't want you to come and ask us to bring Mr. Spawn here and you to be disappointed that he may not be able to testify to, you know, all of the aspects of --

MS. JEDELE: Well, I mean I just -- I find this a little bit absurd that TRC produced reports and nobody can talk to me about the statements in the reports. I mean I need a person with the most knowledge about the report to talk to. You can tell me who that person is, but I need that person; otherwise, I'm going to be deposing Wendy Koch, Peter Spawn, and all the other people, Jean Oliva, that Mr. Smith identified, and I'm going to be putting them on the stand as witnesses to talk about the veracity of statements in the report. And I don't think the judge is going to want that, and I don't think that's necessary.

Somebody in your company, Mr. Smith, has to be able to talk about the statements in this report and the conclusions made by your company for this site. And I don't know who that is.

MS. RAIVEL: Tricia, I think what we're saying is, unfortunately -- and maybe for some reason this is hard for you to believe, maybe it doesn't work this way

in all organizations -- but unfortunately for us, it's inconvenient, but there is no one person who can do that. Because different people were sort of the experts, so to speak, or the specialists, for different parts of the document. I mean I know that makes it really cumbersome for purposes of litigation.

MS. JEDELE: It doesn't make sense. I mean when you have experts -- you have experts all the time at trial; you don't produce all the people in their organization that they rely upon to testify.

MS. RAIVEL: We're not talking about experts.

MS. JEDELE: I know, but --

MS. RAIVEL: We're talking about fact witnesses.

MS. JEDELE: We're talking about people -- there should be somebody in that organization who relied upon their experts and has that capability. They're experts. And if I go in front of a judge and I say these -- this individual is an expert, he's been qualified as an expert before --

MS. RAIVEL: He's not an expert. He's a fact witness.

MS. JEDELE: But he has an area of expertise in engineering. So what he's telling me is that he's

canopies, and they were spawling and deteriorating and made out of concrete, so we went through and we cut those off, and then we put some kind of flashing -- I think it was aluminum flashing -- across the front so that it's more vertical now, and there's no more awnings.

Q. Did that it involve any -- your job with the Fort Devens Army post, did that involve any understanding of environmental impact?

A. Not the civil engineering.

Q. The forestry engineering degree, did that focus on environmental sciences, in addition to engineering?

A. I had biology, took a semester of biology and chemistry.

Q. And have you ever had any -- have you ever taken any classes or courses in hydrology or hydrogeology?

A. Yes.

Q. Was that part of your undergraduate degree?

A. Yes.

Q. Not classes or courses outside of your earning your undergraduate degree?

A. That's correct.



Q. And what was the position when you began in January of 1994 with EPA? Was that EPA Region One?

A. Yes.

Q. And what was your position?

A. Remedial project manager.

Q. Okay. Remedial project manager for what?

A. For the New London site and the Davisville site.

Q. In New London -- you're referring to New London, Connecticut?

A. Groton. Yep.

Q. And what were the qualifications necessary for remedial project manager?

A. You need a bachelor of science in engineering for my position as an environmental engineer.

Q. And is that the same title that you hold today?

A. Yes.

Q. So for approximately 11 years you've been the remedial project manager for NCBC Davisville?

A. That's correct.

Q. And what are your job responsibilities with respect to NCBC Davisville facility?

A. I need to ensure that the Federal Facility



Agreement is followed. I also have contract responsibilities and ensure -- well, no; it's the Federal Facility Agreement and the contracts, basically.

Q. And does U.S. EPA have certain obligations under the Federal Facility Agreement?

A. That's correct.

Q. And when you say that you need to make sure the Federal Facility Agreement is followed, are you speaking about from EPA's perspective?

MS. GANGE: And I'm going -- I want to make it very clear for the record here that Ms. Williams is being deposed as an individual fact witness. She's not an expert, she's not a 30(b)(6) witness, and she's not speaking on behalf of EPA.

MS. GANGE: Would you just read back that last question?

(The last question was read back.)

A. Yes.

Q. So you're not looking at whether or not other parties that might be part of the agreement are satisfying their obligations; you're looking at whether EPA is satisfying its obligations under the Federal Facilities Agreement. Is that fair?

A. No. I also remind the Navy and the State of



Rhode Island that they have obligations also.

Q. And how is it that you have that job responsibility of making sure that the parties to the Federal Facilities Agreement are satisfying their obligations under the agreement?

MS. GANGE: Objection.

A. I think we all have a responsibility to watch each other under the agreement. I think that's what the agreement is.

Q. Maybe it would be more helpful, actually, to just go through what your chain of command is Atlanta U.S. EPA.

A. Chain of command is -- okay. Project manager, first-line supervisor is over me; and then there's the branch chief; and then, let's see, the deputy OSRR, office of site remediation and restoration, and then the chief -- or the division director of OSRR, and then is the deputy regional administrator, then the regional administrator. And I think it's the administrator of EPA. I'm not exactly sure as to whose over the RA.

Q. You said project manager, first-line supervisor?

A. Not -- that's two words.

Q. Okay.





0df900a1-26a6-11da-8e30-0030bdd0f2a0

**Tricia Jedele**

| | |
|---|---|
| **From:** | Laurel.Bedig@usdoj.gov |
| **Sent:** | Friday, September 16, 2005 3:42 PM |
| **To:** | ATurilli@riag.ri.gov; TJedele@riag.ri.gov |
| **Cc:** | Matthew.Oakes@usdoj.gov; Heather.Gange@usdoj.gov |
| **Subject:** | Re: depositions |

Whether they are there or not is immaterial and we will not schedule their depositions on the basis that they may be there for an entirely different purpose.. They are available to be deposed in dc on the dates I gave you. I am out of the office right now but we can talk about scheduling if you like as soon as I return which should be shortly. Laurel

--------------------------

Sent from my BlackBerry Wireless Handheld

Sent Using U.S. DOJ/ENRD BES Server

-----Original Message-----
From: TJedele@riag.ri.gov <TJedele@riag.ri.gov>
To: Bedig, Laurel (ENRD) <LBedig@ENRD.USDOJ.GOV>; ATurilli@riag.ri.gov <ATurilli@riag.ri.gov>; TJedele@riag.ri.gov <TJedele@riag.ri.gov>
CC: Oakes, Matthew (ENRD) <MOakes@ENRD.USDOJ.GOV>; Gange, Heather (ENRD) <HGange@ENRD.USDOJ.GOV>
Sent: Fri Sep 16 14:35:36 2005
Subject: RE: depositions

Please tell me if you are planning to bring Dr. Peterson to Brian Murphy's deposition. You seemed to indicate that during our call on Tuesday. Please also advise whether you plan to bring Gary Chirlin to Margaret Bradley's deposition.

-----Original Message-----
From: Laurel.Bedig@usdoj.gov [mailto:Laurel.Bedig@usdoj.gov]
Sent: Friday, September 16, 2005 1:27 PM
To: ATurilli@riag.ri.gov; TJedele@riag.ri.gov
Cc: Heather.Gange@usdoj.gov; Matthew.Oakes@usdoj.gov
Subject: depositions

Here are the depositions dates and locations we propose for our experts:

Connolly -- September 30th in NYC or October 7th in NYC or Providence
Chirlin - October 11th in DC
Peterson - October 11th in DC
Unsworth -- October 15th or 17th in Providence

In addition, we would like to switch Heidtman to either October 8th or 15th
We would like to schedule the 30(b)(6) for October 29th

Please let us know which fact witnesses you want so we can ascertain their availability for the dates you mentioned. We have not had a chance to talk to Ken Finkelstein yet about his deposition date, but I would like to inform you that we are designating him as a rebuttal witness for ecological risk and nrd assessment.

Have you and Anne had a chance to discuss whether the State would like to request mediation?
Laurel
Laurel A. Bedig
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA, ET AL.,<br>Defendants. | C.A. No. 03-599T |

**NOTICE OF DEPOSITION OF THE UNITED STATES OF AMERICA UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b) (6)**

Please take notice that, pursuant to Fed. R. Civ. P. 30(b) (6), Plaintiff, the State of Rhode Island (the "State"), will take the deposition upon oral examination of Defendant, the United States of America (the "United States"), by a person or persons designated by the United States as having the most knowledge of the documents listed below.

The State will take the deposition upon oral examination of the designated individual or individuals **on June 23, 2005, at 9:30 a.m.** at the Rhode Island Department of Attorney General 150 South Main Street, Providence, Rhode Island 02903, before an official United States Court Reporter or before some other person authorized by law to take depositions. This deposition will continue from day to day thereafter until completed, Sundays and holidays excepted, or as otherwise agreed by counsel for the parties.

**DEFINITIONS**

The Definitions set forth in the States First Set of Interrogatories and Requests for Production of Documents are incorporated herein by reference. Additional terms are defined as

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on 8th day of June, 2005, I forwarded a copy of the *Notice of Deposition of the State of Rhode Island Under Federal Rule of Civil Procedure 30(b) (6)* by pdf attachment to email and by regular mail postage prepaid to:

Laurel A. Bedig, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Suite 8000
Washington, DC 20026-3986
Laurel.Bedig@usdoj.gov

David S. Gualtieri, Trial Attorney
U.S. Department of Justice, ENRD/EDS
P.O. Box 23986
Washington, .C. 20026-8865
David.gualtieri@usdoj.gov

Mary Raivel, Esq.
Navy Litigation Office
Office of the General Counsel
720 Kennon Street SE
Washington Navy Yard
DC 20374-5013
mary.raivel@navy.mil

Michael P. Iannotti, Esq.
Assistant United States Attorney
District of Rhode Island
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
michael.ianotti@usdoj.gov

Gerald McAvoy, Executive Counsel
RI Dept. of Environmental Management
235 Promenade Street
Providence, RI 02908
Gerald.McAvoy@dem.ri.gov

Colleen Cole